**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| BrightView Landscapes, LLC<br>980 Jolly Road,<br>Blue Bell, PA 19422 | ) | Case No. |
| Plaintiff, | ) | |
| v. | ) | |
| Aon Risk Services Central, Inc.<br>200 E Randolph<br>Chicago, IL 60601 | ) | |
| Aon Risk Consultants, Inc.<br>200 E Randolph<br>Chicago, IL 60601 | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff BrightView Landscapes, LLC ("BrightView"), by its undersigned attorneys, brings this Complaint against Aon Risk Services Central, Inc. and Aon Risk Consultants, Inc. (together "Aon"), and alleges as follows:

## NATURE OF THE ACTION

1. This action arises from Aon's failure to perform material obligations under an Independent Consultant Services Agreement (the "Agreement") and a related contractual engagement also subject to the terms of the Agreement pursuant to which Aon was obligated to provide comprehensive insurance brokerage, risk management, loss control, claims oversight, and actuarial services to BrightView.

2. Under the Agreement, Aon undertook to provide a broad range of professional services designed to assist BrightView in managing risk, controlling losses, structuring effective insurance programs, and reducing the financial burdens associated with claims, reserves, and collateral obligations. In exchange, BrightView paid Aon millions of dollars in fees.

3. Rather than providing the promised services, Aon failed to perform its contractual obligations and failed to deliver services in accordance with applicable professional standards. As

described herein, Aon breached its obligations with respect to insurance program design, loss control, collateral management, policy renewal negotiations, insurer relations, and actuarial services.

4. Aon's breaches caused BrightView significant damages, including the payment of substantial fees for services that Aon failed to provide or inadequately performed, the maintenance of excessive reserves and collateral obligations, and other financial harm resulting from Aon's failure to satisfy its contractual commitments. BrightView seeks compensatory damages, restitution, disgorgement, and all other relief available at law or in equity arising from Aon's breaches of the Agreements.

## THE PARTIES

5. BrightView is a private limited liability company with a principal place of business at 980 Jolly Road, Blue Bell, Pennsylvania 19422. BrightView has operations in the State of Maryland.

6. Aon Risk Services Central, Inc. is incorporated in Illinois with a principal place of business at 200 E Randolph Chicago, Illinois 60601. Aon Risk Services Central, Inc. is registered to do business in Maryland.

7. Aon Risk Consultants, Inc., a corporate affiliate of Aon Risk Services Central, Inc., is incorporated in Illinois with a principal place of business at 200 E Randolph Chicago, Illinois 60601. Aon Risk Consultants, Inc. is registered to do business in Maryland.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and because the parties to this action are citizens of different states. The sole member of BrightView is incorporated under the law of Delaware with its principal place of business in Pennsylvania, and each Aon defendant is a citizen of Illinois.

9. This Court has personal jurisdiction over Aon because Section 9.b of each of the Agreements states that Aon "expressly consents to the exclusive jurisdiction of the courts of Maryland in connection with the resolution of disputes" under the Agreements "and waives any objection that any such court would not be a convenient forum."

10. This Court also has personal jurisdiction over Aon under Fed. R. Civ. P. 4(k)(1)(A) and Maryland's long-arm statute, Md. Code Ann., Cts. & Jud. Proc. § 6-103. Exercising personal jurisdiction would also be consistent with the Due Process Clause of the Fourteenth Amendment. Aon purposefully availed itself of the privilege of conducting business in Maryland by entering into the Agreements governed by Maryland law, agreeing to resolve disputes concerning those Agreements in Maryland, registering to do business in Maryland, and arranging for insurance that covers BrightView's operations in Maryland, among other locations. BrightView's claims arise directly from Aon's conduct and obligations under the Agreements.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Aon resides in this District pursuant to 28 U.S.C. § 1391(c)(2).

## FACTUAL BACKGROUND

### I. THE INDEPENDENT CONSULTANT SERVICES AGREEMENT

12. BrightView is a national provider of commercial landscaping services, including landscaping maintenance, landscape development, tree care, irrigation, and related outdoor services. The size and scope of BrightView's operations expose it to a broad range of operational risks, requiring sophisticated insurance, risk-management, claims-management, and loss-control programs.

13. Aon is one of the world's largest providers of insurance brokerage and other services, holding itself out as an expert capable of providing sophisticated advice and exerting leverage over insurance companies based on the volume of business it controls.

14. BrightView and Aon entered into the Agreement for successive annual service periods so that Aon could ensure that BrightView's insurance program and risk management structure would be efficient and economically viable for BrightView. The Agreements contained materially the same terms relevant to BrightView's claims. In the Agreements' Statements of Work, Aon promised that BrightView would receive a comprehensive package of services covering nine enumerated service categories, plus actuarial services, and 111 specifically itemized services. The enumerated service categories included: (1) risk management; (2) insurance policy placements and renewals; (3) administrative services; (4) claims management services; (5) safety and loss control services; (6) surety services; (7) technology services; (8) annual stewardship reporting; and (9) consulting.

15. In Section 1.c of the Agreements, Aon promised to provide the above-referenced services "in accordance with applicable professional standards."

## II. AON BREACHED THE AGREEMENTS.

16. Despite charging BrightView millions of dollars in fees annually, Aon did not perform a substantial portion of services it sold to BrightView, and the limited services that Aon did provide fell well short of professional standards.

17. Aon's breaches included the following:

### A. Excessive Self-Insurance Reserves and Flawed Program Structure

18. The Agreements provided that Aon would "[a]ctively participate with BrightView in ongoing risk management activities and assist BrightView in carrying out the Risk Management Objectives set forth [within the Agreement]." Agreements, SOW § 1.A.

19. The Agreements required Aon to actively participate in BrightView's risk management activities, review BrightView's actual and potential loss exposures, design strategies for managing those exposures, evaluate alternatives to existing insurance structures, and design and implement insurance programs that maximized the financial benefit of risk retention to BrightView. Agreements, SOW §§ 1.A.1, 1.A.2, 1.A.5.

20. The first two of those categories were: (1) "Review all present and potential loss exposures and *design strategies for managing risks relating to those exposures*," and (2) "Design and implement insurance programs that *maximize the financial benefit of risk retention to BrightView*." Agreements, SOW § 1.A.5 (emphasis added). Risk management strategy required proactive analysis and design of meaningful structural changes to the BrightView insurance program, such as dramatically lowering its retentions and deductibles. To the extent Aon purported to provide risk-management recommendations concerning those issues, such recommendations were not developed or implemented in a manner that maximized the financial benefit of risk retention to BrightView and fell below applicable professional standards.

21. The risk-management obligations imposed by the Agreements were distinct from Aon's claims-management obligations, such as soliciting and responding to market quotes. Agreements, SOW § I.B ("Insurance Policy Placements and Renewals"). The Agreements required proactive analysis,

evaluation of alternatives, and design of insurance-program structures. During the 2025 renewal, discussed below, Aon's performance of these functions fell below applicable professional standards.

22. Aon failed to perform the risk-management design work required by the Agreements. Although Aon was contractually obligated to analyze BrightView's loss exposures, evaluate alternatives to existing program structures, and design insurance programs that maximized the financial benefit of risk retention, Aon failed to develop or implement meaningful structural changes to BrightView's insurance program. Instead, Aon continued to recommend and renew substantially similar program structures despite the growing financial burdens associated with BrightView's reserves and collateral obligations.

23. Aon's failure to design and implement insurance programs that maximized the financial benefit of risk retention to BrightView, and its failure to evaluate and pursue appropriate alternatives to the existing program structure, breached its obligations under the Agreements.

24. As a result of Aon's failure to perform its contractual risk-management obligations, BrightView remained in an insurance program structure that generated excessive reserves and collateral obligations, provided minimal meaningful risk transfer, and was misaligned with BrightView's risk tolerance and financial objectives.

**B. Deficient Loss Control**

25. The Agreements specifically obligated Aon to provide "[s]ervices and training by designated safety experts" in at least 10 "Training" areas and six "Services" areas. Agreements, SOW §§ 1.E.1, 2. The training areas included: (1) monthly training seminars for certification of OSHA 10 and OSHA 30; (2) CPR/First aid; (3) hazard communication; (4) fall protection; (5) safe driving; (6) accident investigation; (7) tools (powered and hand); (8) personal protective equipment; (9) heat stress; and (10) financial aspects of safety. *Id.* The service areas included: (1) development of safety standards; (2) development of training programs, first aid and treatment programs, and substance abuse programs; (3) oversight of field loss control; (4) tracking and reporting; (5) coordination and development of safety incentive programs; and (6) active return-to-work program. *Id.*

26. Aon failed to provide the vast majority of these required safety and loss control services.

27. By failing to provide the safety and loss control services required under Section 1.E of the Agreements, Aon breached its contractual obligations to BrightView.

28. As a result of Aon's failure to provide the promised safety and loss control services, BrightView was deprived of the safety, training, loss-prevention, and risk-management resources for which it contracted and paid, contributing to increased losses, reserves, and related financial burdens.

**C. Unsustainable Collateral Demands**

29. The Agreements required Aon to actively participate in BrightView's risk-management activities, design strategies for managing BrightView's loss exposures, design and implement insurance programs that maximized the financial benefit of risk retention to BrightView, evaluate alternatives to existing insurance structures, and perform services relating to collateral adjustments and insurer reserving activities. Agreements, SOW §§ 1.A, 1.A.1, 1.A.2, 1.A.5, 1.A.7, 1.C.4. BrightView relied upon Aon's expertise and professional judgment in connection with the design and evaluation of its insurance program structure and risk-management strategy.

30. During the term of the Agreements, collateral requirements imposed in connection with BrightView's insurance program increased to financially unsustainable levels. Aon failed to take meaningful steps to address the underlying causes of those escalating collateral demands. Among other things, Aon failed to negotiate reductions to the base collateral requirements or implement fundamental risk management design changes.

31. As a result of Aon's deficient performance, the insurers have imposed base collateral requirements that are plainly excessive.

32. Aon's failure to adequately perform its contractual responsibilities relating to collateral management and collateral-related insurance program services breached the Agreements.

33. As a result of Aon's breaches, BrightView was required to maintain excessive collateral obligations, resulting in substantial financial burdens and restrictions on the use of capital.

**D. Broker Performance Deficiencies During the 2025 Renewal**

34. During the 2025 renewal process, Aon advised BrightView not to market its insurance program and instead to renew the existing program. BrightView relied on that recommendation based on Aon's expertise as its insurance broker. That advice caused BrightView to forgo marketing the

program during a significant portion of the renewal cycle. After BrightView later directed that the program be marketed, the remaining time available to conduct the marketing and renewal process was substantially reduced. Aon also provided key excess liability quotations less than one day before the expiration of existing coverage, leaving BrightView with inadequate time to evaluate available options and make informed renewal decisions.

35. By failing to timely and competently perform its renewal and placement responsibilities, Aon breached its obligations under the Agreement and failed to provide services in accordance with applicable professional standards.

36. As a result of Aon's breaches, BrightView was deprived of a meaningful opportunity to evaluate alternative insurance structures and markets during the 2025 renewal process and was subjected to adverse renewal outcomes that could have been mitigated through a timely and properly executed marketing and negotiation effort.

37. The Agreements required Aon to advise BrightView regarding policy placement and renewal, identify qualified insurers, negotiate coverage and premium terms, place insurance consistent with BrightView's needs, and perform those services in accordance with applicable professional standards. Agreements § 1.c; SOW § 1.B.

38. BrightView retained Aon as a trusted advisor with specialized expertise concerning insurance placement, insurer negotiations, and risk-management strategy. BrightView relied upon Aon's professional advice and recommendations in making decisions concerning the structure and placement of its insurance program.

39. Despite representing itself as possessing substantial market access and strong relationships with insurers, Aon failed to obtain a commercially competitive umbrella liability proposal from Chubb that would provide consistent handling between the primary and umbrella layers of BrightView's insurance program. When Chubb ultimately offered an umbrella layer, the proposed terms were not commercially competitive and would have further increased BrightView's reserve and collateral burdens.

40. BrightView paid Aon exorbitant fees because Aon promised results based on its purported ability to exert pressure on Chubb and other insurers to achieve competitive terms.

41. Aon's inability to secure competitive umbrella-layer terms and its failure to obtain a commercially viable solution despite years of renewal efforts breached its obligations to competently perform placement and renewal services under the Agreements and in accordance with applicable professional standards.

42. As a result of Aon's breaches, BrightView was deprived of competitive insurance options and was forced to continue operating under an insurance structure that failed to address the reserve and collateral issues affecting the company.

**E. Actuarial Integrity Concerns**

43. The Agreements required Aon to provide actuarial services as part of the services for which BrightView paid substantial annual fees and to perform all services in accordance with applicable professional standards. Agreements § 1.c; SOW § 1.J.

44. During the course of its engagement, Aon's actuarial team altered its loss estimation methodology to place greater weight on "Paid Methods" without informing BrightView of the change or explaining the anticipated impact of that revised methodology on projected losses and reserves. In addition, Aon modified reserve assumptions and later reversed those assumptions without providing a clear explanation for the changes. Aon also failed to provide actuarial analyses and reports in a manner that was clear, thorough, and reasonably understandable.

45. Aon altered material actuarial assumptions and methodologies without adequately informing BrightView of those changes or their likely consequences. BrightView reasonably relied upon Aon's actuarial expertise and disclosures in evaluating reserves, risk-management decisions, and insurance-program structure.

46. By changing material actuarial assumptions and methodologies without adequate disclosure and by failing to provide actuarial services in a transparent and professionally adequate manner, Aon breached its obligations under the Agreements and failed to perform its services in accordance with applicable professional standards.

47. As a result of Aon's breaches, BrightView was deprived of reliable and transparent actuarial analyses on which to base risk-management and insurance-program decisions, contributing to increased reserve obligations and related financial burdens.

**F. Aon Claims Closure Services ("ACCS") Deficiencies**

48. In addition to the Agreement, Aon entered into an Aon Claims Closure Services ("ACCS") engagement with BrightView. The ACCS engagement was expressly subject to the terms and performance standards of the Agreement.

49. Under the ACCS engagement, Aon represented that it would provide active claim-management services and would document the basis for compensation it sought to recover from BrightView. Aon, however, failed to provide documentation sufficient to substantiate the compensation it claimed and failed to provide meaningful support demonstrating that its claimed compensation reflected value actually delivered to BrightView.

50. Aon further used a "Gain Share Compensation" structure that rewarded Aon based upon differences between projected claim values and claim payments at closure, regardless of whether those differences resulted from services actually performed by Aon. In the ACCS SOW, Aon promised, among other things, to "audit and benchmark open claim files, identify mitigation opportunities, and monitor Claim Service Provider activities against developed action plans and target dates established by Aon consultants"; "contact adjusters on claims to gather additional information and provide consultancy to reduce exposure or shorten claim lifecycle for all claims remaining open during the period of injury management services"; and "delivery effective and timely claim level strategy with specific action items and measurable target dates through oversight and partnership of your CSP(s) adjusters, examiners, and/or supervisors [and] through implementing accountability measures for your Claim Service Provider(s) to assist in bringing claims to closure by means deemed appropriate, if to agreed benefit by BrightView." ACCS SOW, Part 2 § 2.A, B., C. However, the compensation structure insulated Aon from financial consequences associated with claims that developed adversely. As a result, the compensation structure aligned Aon's financial incentives with the generation of compensation for Aon rather than with the delivery of measurable benefits to BrightView.

51. The ACCS compensation methodology failed to reasonably relate compensation to services actually performed and created a conflict between Aon's financial interests and BrightView's interests. Despite seeking substantial compensation under the ACCS engagement, Aon failed to provide adequate support demonstrating that the claimed compensation reflected actual savings attributable to

Aon's work. For example, under the ACCS SOW, Aon undertook to provide for each invoice "a corresponding Billing Summary Report with supporting detail on a claim level basis." ACCS SOW, Part 3 § 1. Aon never provided such backup, making it impossible to verify or justify the "Gain Share Compensation" Aon claimed. Moreover, Aon's services ultimately produced net negative results.

52. The Gain Share Compensation structure created incentives that were inconsistent with BrightView's interests and rewarded Aon irrespective of whether Aon delivered meaningful value to BrightView. Aon failed to adequately disclose the extent to which the compensation methodology would permit Aon to recover substantial compensation even where claim outcomes were unrelated to services actually performed by Aon.

53. By using this compensation structure while failing to provide sufficient supporting documentation and transparency, Aon placed its financial interests in conflict with the interests of the client it was retained to advise.

54. By failing to provide the services and supporting documentation required under the ACCS engagement, and by employing a compensation structure that rewarded Aon irrespective of the value delivered to BrightView, Aon failed to perform its obligations in accordance with applicable professional standards and breached its obligations under the Agreements and related engagements.

**G. Aon's Advisory Role and Fiduciary Responsibilities**

55. BrightView retained Aon as a long-term advisor concerning insurance placement, risk management, claims administration, actuarial services, loss control, and related matters. Aon held itself out as possessing specialized expertise in those areas and undertook to provide advice and recommendations upon which BrightView was expected to rely. BrightView, in turn, relied upon Aon's expertise, analyses, recommendations, and disclosures in making decisions concerning its insurance program, claims strategy, reserve management, collateral obligations, and risk-management activities.

56. Throughout the parties' relationship, Aon occupied a position of trust and confidence and received substantial compensation in exchange for providing specialized professional advice and consulting services to BrightView. Aon was expected to act consistently with BrightView's interests, disclose material information relevant to BrightView's decision-making, and exercise professional judgment in connection with the services it agreed to provide.

**COUNT I**
(Breach of Contract)

57. Plaintiff repeats and realleges each and every allegation above as if set forth in full herein.

58. The Agreements are valid and binding contracts between BrightView and Aon. Under the Agreements, Aon was obligated to provide certain services to BrightView. In exchange for these services, BrightView agreed to provide fee payments to Aon, and did provide such payments.

59. As alleged herein, Aon breached the Agreements by (i) implementing excessive self-insurance reserves and a flawed program structure; (ii) failing to provide sufficient loss control services; (iii) failing to address or mitigate unsustainable collateral demands; (iv) failing to adequately perform services during the 2025 renewal; (v) failing to leverage market relationships; and (vi) changing loss estimation methodology without disclosing this action and its high-risk impact on BrightView.

60. BrightView has suffered damages as a direct result of Aon's breaches of the Agreements. These damages sustained by BrightView include, but are not limited to, fees paid for unreceived services, or services that failed to conform to contractual and professional standards.

**COUNT II**
(Breach of Fiduciary Duty)

61. As BrightView's insurance broker, advisor, and agent, Aon occupied a position of trust and confidence and owed fiduciary duties to BrightView. Aon held itself out as possessing specialized expertise concerning insurance placement, risk management, loss control, claims administration, collateral management, and actuarial services. BrightView retained Aon to provide advice and recommendations concerning those matters and reasonably relied upon Aon's expertise, judgment, disclosures, and recommendations in making decisions concerning its insurance program and risk-management activities.

62. By virtue of that relationship, Aon owed fiduciary duties to BrightView, including duties of loyalty, candor, disclosure, good faith, and the obligation to act consistently with BrightView's interests in connection with the professional services it agreed to provide.

63. Aon breached those fiduciary duties by, among other things:

a. failing to provide material services it promised to perform under the Agreements;

b. providing deficient advice concerning the structure of BrightView's insurance program and related risk-management strategies;

c. failing to disclose material changes to actuarial methodologies and assumptions and the likely consequences of those changes;

d. failing to disclose information necessary for BrightView to evaluate the basis for Aon's claimed ACCS compensation;

e. implementing and seeking compensation under the ACCS Gain Share Compensation structure, which created financial incentives inconsistent with BrightView's interests; and

f. placing its own financial interests, and potentially its relationships with insurers, ahead of BrightView's interests.

64. Aon's conduct was inconsistent with the trust and confidence BrightView placed in Aon and with the fiduciary obligations arising from Aon's role as BrightView's broker, advisor, and agent.

65. As a direct and proximate result of Aon's breaches of fiduciary duty, BrightView suffered damages including, but not limited to, excessive fees paid to Aon, increased reserve obligations, increased collateral obligations, costs associated with deficient insurance program design, and other financial harm.

66. In addition to monetary damages, BrightView is entitled to equitable and restitutionary relief arising from Aon's breaches of fiduciary duty, including disgorgement or forfeiture of compensation received by Aon in connection with the conduct described herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff BrightView respectfully requests that the Court enter judgment against Defendant Aon as follows:

(a) Compensatory damages in an amount to be determined at trial;

(b) Restitution, disgorgement, and/or reimbursement of fees paid to Aon for services that were not provided or were not performed in accordance with contractual and professional obligations;

(c) Pre-judgment and post-judgment interest as permitted by law;

(d) Costs of suit, including but not limited to reasonable attorney's fees and costs;

(e) Such equitable relief as the Court deems just and proper; and

(f) Such other and further relief as the Court may deem appropriate.

Dated: September 15, 2026

Respectfully submitted,

By: */s/ Peter J. Martinez*
Peter J. Martinez

**HOGAN LOVELLS CADWALADER US LLP**
Peter J. Martinez, Bar No. 28672
Jay L. Epstein, Bar No. 32352
100 International Drive, Suite 2000
Baltimore, MD 21202
peter.martinez@hlc.com
jay.epstein@hlc.com
Tel: (410) 659-2700
Fax: (410) 659-2701

Douglas S. Crosno (*pro hac vice* forthcoming)
**HOGAN LOVELLS CADWALADER US LLP**
555 13th Street NW
Washington, DC 20004
douglas.crosno@hlc.com
Tel: (202) 637-6885

*Attorneys for BrightView Landscapes, LLC*